**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Case No.: 8:20-cv-00509-CEH**

IAN TAYLOR,

      *Plaintiff,*

v.                                                              ***\*\*\* Dispositive Motion \*\*\****

CITIZENS TELECOM SERVICES
COMPANY, LLC,

      *Defendant.*

_____/

**DEFENDANT FRONTIER'S MOTION TO DISMISS PLAINTIFF**
**TAYLOR'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendant Citizens Telecom Services Company, LLC d/b/a Frontier Communications

("Frontier") moves, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for entry of an order

dismissing Plaintiff Ian Taylor's ("Taylor") Amended Complaint [ECF No. 29].

## INTRODUCTION

Taylor is a former employee of Frontier. [ECF No. 29 at ¶27]. In connection with the

termination of his employment from Frontier, he received a notice informing him how to

continue his health insurance benefits under the Consolidated Omnibus Budget

Reconciliation Act of 1985 ("COBRA"). Despite that fact that United States Department of

Labor ("DOL") has recently confirmed in a brief filed in a substantively identical case pending

in this District before Judge William F. Jung[1] that a notice like the one at issue here is

consistent with the statute, Taylor claims that it was deficient as it failed to inform him of the

details of his benefits. Taylor seeks a monetary recovery in the form of statutory damages for

himself and for the class of individuals who received the same letter. He also seeks injunctive

and declaratory relief. Taylor's Amended Complaint should be dismissed for several reasons:

---

[1] *Carter v. Southwest Airlines, Co. Board of Trustees*, Case No. 8:20-cv-01381 (M.D. Fla. 2020). Frontier
has identified the *Carter* case as a "related case." *See* ECF No. 30.

1.      Taylor lacks Article III standing so his Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). His theory of injury is primarily an "informational injury" theory. However, that theory is no longer viable following the Eleventh Circuit's recent decision in *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020) and he otherwise fails to demonstrate any injury that is fairly traceable to Frontier's actions.

2.      Further, given that the "informational injury" theory is no longer viable after *Trichell*, even if the Court finds that Taylor has sufficiently alleged other forms of injury that are fairly traceable to Frontier, the Court should still dismiss the class allegations because Taylor has not alleged a certifiable class, as the Court will not be able to ascertain whether any other class members suffered additional injury sufficient to confer standing without resorting to an individualized inquiry.

3.      If the Court gets past the standing problems, the Amended Complaint should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) because Taylor fails to state a cause of action. The COBRA Notice is consistent with the DOL's position on the issue.

4.      Taylor's claims for injunctive and declaratory relief should be also dismissed because Taylor has not sufficiently alleged the required elements for such relief.

STANDARD OF REVIEW

The *Iqbal/Twombly* Fed. R. Civ. P. 12(b)(6) standard has become ingrained in federal pleading practice over the last decade: "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its own face.'" *Apparisio v. Pruco Life Ins. Co.*, 2020 WL 3268487, at *2 (S.D. Fla. June 17, 2020) (Scola, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[w]hile the Court must accept well-pleaded facts as true, it need not assume the truth of conclusory allegations, nor are parties entitled to have the Court view unwarranted deductions of fact or argumentative inferences in their favor." *Apparisio*, 2020 WL 3268487, at *2. Additionally, the "court may also properly consider

2

documents attached to the complaint, answer, or motion so long as they are (1) central to the plaintiff's claim, and (2) undisputed." *Id.*, at *2.

## TAYLOR FAILS TO ESTABLISH ARTICLE III STANDING

### Recent Eleventh Circuit Authority
### Forecloses Taylor's Theory of Standing

As this Court is aware,[2] the metes and bounds of when a plaintiff has suffered a concrete injury sufficient to establish that they have Article III standing—and thus that a federal court has subject matter jurisdiction—has been rapidly evolving over the last five years. To briefly summarize the highlights of this jurisprudence, on May 16, 2016 the Supreme Court issued its decision on *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016) and held that a plaintiff does not automatically establish Article III standing merely by alleging that a particular federal statute was technically violated.

Two months after *Spokeo* was decided, the Eleventh Circuit issued an unpublished opinion in *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), an FDCPA case which applied *Spokeo* and ruled that "through the FDCPA, Congress has created a new right— the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.* at 994. Under *Church*, an "informational injury" alone arguably satisfied *Spokeo* and constituted an injury in fact for Article III standing. The panel did not designate *Church* as a published opinion so it was never binding authority on district courts in the Circuit. *See United States v. Waked Hatum*, 969 F.3d 1156, 1169, n.9 (11th Cir. 2020) ("an unpublished opinion is not binding precedent in this Circuit") (citing 11th Cir. R. 36-2).

---

[2] *See Bowen-Hay v. Ocwen Loan Servicing, LLC*, 2020 WL 5747187, at *4 (M.D. Fla. Sept. 25, 2020) (Honeywell, J.) (citing *Trichell* and noting that "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

Following *Church* the Eleventh Circuit issued several published opinions applying *Spokeo* and tightening the belt on Article III standing in the Circuit. *See Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (finding no standing based on mortgagee's failure to timely file a certificate of mortgage discharge in violation of New York law, where mortgagor suffered no real harm); *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) (finding that receipt of a single unwanted text message did not create standing under the TCPA); *Muransky v. Godiva Chocolatier, Inc.*, ---F.3d----, 2020 WL 6305084, at *15 (11th Cir. 2020) (en banc) (finding no standing where defendant technically violated FACTA by printing the first six and last four digits of plaintiff's credit card number).

The evolving case law seems to have created difficulty for practitioners and courts attempting to cut through the morass of potentially conflicting authorities. In the COBRA notice context, some pre-*Trichell* decisions[3] relied on *Church* or its progeny and found that a plaintiff receiving a technically noncompliant COBRA notice suffered an informational injury sufficient to establish Article III standing.

The law on this issue became pellucid when the Eleventh Circuit issued its published decision on July 6, 2020 in *Trichell*—four years to the day after *Church*—holding that the recipients of allegedly misleading debt collection letters lacked Article III standing to pursue claims under the FDCPA because the letters did not cause them any tangible injury. The Eleventh Circuit joined other circuits[4] in concluding that "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* Following *Trichell*, an

---

[3] *See Delaughter v. ESA Mgmt., LLC*, 2018 WL 7349251 (M.D. Fla. Mar. 20, 2018) (Scriven, J.) and *Robles v. Lowe's Home Centers, LLC*, 2020 WL 1027592 (M.D. Fla. Mar. 3, 2020) (Jung, J.).

[4] The Eleventh Circuit cited to the following decisions from other circuits similarly holding that an informational alone does not satisfy Article III: *Frank v. Autovest*, LLC, 961 F.3d 1185, 1188-89 (D.C. Cir. 2020); *Casillas v. Madison Ave Associates, Inc.*, 926 F.3d 329, 338 (7th Cir. 2019); *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 467 (6th Cir. 2019); *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346-47 (4th Cir. 2017)).

informational injury alone is no longer a sufficient independent basis to establish Article III standing in the Eleventh Circuit. End stop.

The *Trichell* informational injury holding extends beyond the FDCPA and applies equally in the context of an ERISA matter. In fact, the Supreme Court noted just a few months ago that "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Nine days after the *Trichell* decision was issued, Magistrate Judge Jonathan Goodman of the Southern District of Florida applied the *Trichell* holding to a COBRA notice class action and found that the plaintiffs had "demonstrated, at most, a technical, procedural violation which did not cause them actual harm" and that, following *Trichell*, that "is not the type of informational injury which can confer standing." *Bryant v. Wal-Mart Stores, Inc.*, 2020 WL 4333452, at *16 (S.D. Fla. July 15, 2020) (recommending, based on *Trichell*, that plaintiffs lacked Article III standing where their only injury was the "informational injury.").

And in addition to *Bryant*, in the few months since the *Trichell* decision issued, district courts around the Eleventh Circuit have rejected the informational injury theory in a variety of cases. *See, e.g. Cooper v. Atl. Credit & Fin., Inc.*, 822 F. App'x 951, 954 (11th Cir. 2020) (relying on *Trichell* and finding that plaintiff lacked standing to bring an FDCPA claim for being allegedly misled and confused about her ability to dispute a debt because "these allegations, absent something more, are insufficient to establish that [the plaintiff] had standing"); *Daniels v. Aldridge Pite Haan, LLP*, 2020 WL 3866649, at *4 (M.D. Ga. July 8, 2020) (Self, J.) (relying on *Trichell* and reaching same general conclusion); *Hill v. Resurgent Capital Services, L.P.*, 2020 WL 4429254, at *4 (S.D. Fla. July 31, 2020) (Moreno, J.) (same); *Ruffin v. Dynamic Recovery Sols., LLC*, 2020 WL 6134666, at *3 (M.D. Fla. Oct. 19, 2020) (Merryday, J.) (same).

**Taylor's Allegations Do Not Sufficiently Establish a Connection
Between The COBRA Notices and His Alleged Loss of Benefits**

Taylor must possess Article III standing to maintain a claim. *Spokeo*, 136 S. Ct. at 1547. The "irreducible constitutional minimum" of Article III standing requires Taylor to establish: (1) a concrete and particularized injury in fact; (2) "that is fairly traceable to the challenged conduct of the defendant"; and (3) "that is likely to be redressed by a favorable judicial decision." *Id*. It is Taylor's burden to establish the components of standing at the pleading stage, and he "must clearly…allege facts demonstrating each element." *Id*. (citation omitted). Taylor failed to do so here because he cannot establish a causal connection between the alleged violation and the alleged harm. The Court should dismiss Taylor's claims pursuant to Fed. R. Civ. P. 12(b)(1).

To establish an "injury in fact," Taylor must show that he suffered "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell*, 964 F.3d at 996. An injury is "concrete" if it is "real" and not "abstract." *Id*. Even for a statutory violation, the Eleventh Circuit has now rejected the "anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury." *Id*. at n. 2; *Muransky*, 2020 WL 6305084, at *5 ("Statutory violations do not—cannot—give us permission to offer plaintiffs a wink and a nod on concreteness."). And alleging a concrete and particularized injury alone does not establish standing. A plaintiff must further connect the injury to the conduct complained of. *Lujan*, 504 U.S. at 560-61.

"Consistent with *Spokeo*, courts within the Eleventh Circuit have dismissed cases for lack of Article III standing where a plaintiff has alleged nothing beyond a bare procedural or technical injury." *Bryant*, 2020 WL 4333452, at *15; *see Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) (vacating class certification in TCPA case involving "bare procedural violation" of do-not-call list requirement); *Muransky*, 2020 WL 6305084, at *15 (vacating FACTA

6

settlement finding printing too many digits on credit card receipt in violation of FACTA to be a bare procedural violation).

In *Bryant*, Judge Goodman explained that even if the plaintiffs' receipt of an allegedly deficient COBRA election notice could give rise to some sort of "informational injury," the plaintiffs "would still have to prove that they suffer[ed], by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Bryant*, 2020 WL 4333452, at 16.

None of the plaintiffs in *Bryant* claimed that they would have elected COBRA had they been provided with the information allegedly missing from the COBRA election notices. *Id.* at 17. Similarly, Taylor's inability to establish a connection between his alleged injuries and the purported defects in the COBRA Notice warrant dismissal of Taylor's claims with prejudice.

### There Is No Causal Connection Between Taylor's Purported Injuries And The Alleged Informational Deficiencies In The COBRA Notice

Taylor's allegations do not establish the requisite causal connection between the alleged deficiencies in the COBRA Notice and his alleged injuries. Taylor suggests that the purportedly deficient COBRA Notice resulted in the following: he "los[t] … health insurance for himself and his dependents" and "he paid out of pocket for medical expenses incurred by himself and his dependents up until the time [he] was able to obtain health insurance through a subsequent employer." [ECF No. 29 at ¶25-26].

Here is the problem: Taylor has not established that those problems were causally tied to the alleged deficiencies in the COBRA Notice. Taylor does not allege, for instance, that he attempted to timely exercise his right to enroll in COBRA after his termination but was unable to do so. He does not allege that he was provided with an incorrect mailing address or fax number to submit his completed COBRA election form, that the website provided for

online enrollment was inoperable or inaccessible, or that he did not understand that he had the right to enroll in COBRA (or to seek an alternative to COBRA continuation coverage).

In fact, just like the "no Article III standing" plaintiffs in *Bryant*, Taylor does not claim that he made any attempt to elect COBRA continuation coverage. *See Bryant*, 2020 WL 4333452, at *17 (finding plaintiffs lacked Article III standing because "[n]ot one of the three named [p]laintiffs claim that they would have (or could have) elected COBRA had they been provided with the allegedly missing information"); *see also*, *Rodriguez v. His House Children's Home*, 2020 WL 6525470, at *4 (S.D. Fla. Nov. 5, 2020) (Scola, J.) (finding no Article III standing in FCRA case where even though a statutorily required letter apparently did not strictly comply with the form called for by the statute, the plaintiff was not able to tie that purported deficiency to a real world injury.).

Taylor mentions certain informational deficiencies with respect to the COBRA Notice:

1. He alleges the COBRA Notice provided the length of continuation coverage, but did not specify when the coverage, if elected, would terminate [ECF No. 29 at ¶45], and claims that without the termination date, the COBRA Notice did not permit him to make an "informed decision." (*Id.* at ¶47).

2. He claims that "the COBRA notice did not contain information regarding *where* [the COBRA coverage payments] should be sent" and that he was therefore "deprived the full breadth of information to which she [sic] was entitled, and could not determine from the notice, how to properly enroll and maintain continuation coverage." (*Id.* at ¶51) (emphasis in original).

3. He claims the COBRA Notice omitted important information identifying the party responsible for administration of continuing coverage, but he acknowledges that the COBRA Notice identified WageWorks as the third-party administrator and Frontier as the employer. (*Id.* at ¶55).

4. He alleges that a combination of his previous allegations results in a notice that is not written "in a manner calculated to be understood by the average plan participant." (*Id.* at ¶58).

A review of the COBRA Notice itself demonstrates that Taylor cannot connect the alleged deficiencies in the COBRA Notice to his failure to enroll in COBRA. First, with regard

to the termination date, the COBRA Notice sets forth that "the maximum COBRA period is generally measured from the date of the qualifying event even if coverage is not immediately lost (unless stated otherwise in your SPD)." [ECF No. 21-1 at 7]. Here, the qualifying event was Taylor's termination. (*Id.* at 1) ("Qualifying Event: Termination"). As Taylor acknowledges, the COBRA Notice stated that "[i]n the case of a loss of coverage due to the covered employee's termination of employment or reduction in hours of the covered employee's employment, coverage may generally last for up to 18 months. [*Id.* at 7].

Accordingly, the COBRA Notice "provided [Taylor] with the length of continuation coverage…" [ECF No. 29 at ¶45], advised that "the maximum COBRA period is generally measured from the date of the qualifying event" [ECF No. 21-1 at 7], identified his termination as the qualifying event (*Id.* at 1); and explained that COBRA coverage "may generally last for up to 18 months" (*Id.* at 7) for an employee that lost coverage due to termination. Despite Taylor's assertions to the contrary, the COBRA Notice explained how to calculate the termination date of the continuation coverage. And in any event, Taylor does not allege that he would have enrolled in COBRA or obtained coverage from the marketplace had he known the specific termination date.

Second, the COBRA Notice had a section titled "COBRA COVERAGE ELECTION FORM INSTRUCTIONS" which provided Taylor with three options for enrollment:

"If you choose to elect COBRA coverage, please complete the attached COBRA Coverage Election Form and mail the Completed [Form] by [USPS] to WageWorks at P.O. Box 223684 Dallas, TX 75222-3684. You may also fax the completed COBRA Coverage Election From to Fax#: 866-450-5634." …

IF YOU WANT TO ELECT ONLINE: If you wish to elect online, you can complete your enrollment on our website at mybenefits.wageworks.com….

Your election must be made on or before the Election Deadline identified on the first page of the notice, which is 6/22/2019….

If you do not mail or electronically submit a completed COBRA Coverage Election Form by the Election Deadline shown above, you will lose your right to elect COBRA coverage…..

(*Id.* at 3). The COBRA Coverage Election Form instructs the recipient to "make initial and ongoing premiums payable to WageWorks, Inc., PO Box 660212 Dallas, TX 75266-0212." (*Id.* at 4). The COBRA Notice also explains the consequences for delinquent or missed payments as well as the details of the 30-day grace period after the first day of the month to make each monthly payment. (*Id.* at 1, 9). The Notice advised Taylor where to submit his enrollment form, where to make payments, the consequences of non-payment, and which entity to pay.

Third, Taylor fails to allege that the COBRA Notice's failure to identify the "Plan Administrator" in any way interfered with his right or ability to elect continuation coverage. *See Bryant*, 2020 WL 4333452, at 16 (finding no evidence that the defendant's failure to identify the plan administrator in the COBRA election notice interfered with the plaintiff's right or ability to elect continuation coverage). Taylor's allegations focus instead on the fact that the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee.

The COBRA Notice explained Taylor's right to enroll in COBRA Continuation Coverage, contained clear instructions on how Taylor could have continued his coverage, and explained that Taylor could purchase health insurance from the marketplace. (Id. at 1, 11, 12). Armed with all of this information, Taylor chose to do nothing and allowed his coverage to end on April 20, 2019. Without any factual allegations to connect the dots between the alleged omissions in the COBRA Notice and Taylor's alleged loss of coverage, Taylor cannot demonstrate an injury in fact and therefore lacks standing to proceed. The Court should dismiss Taylor's claims.

## THE COURT SHOULD DISMISS THE CLASS ALLEGATIONS IN THE AMENDED COMPLAINT BECAUSE IT DOES NOT PLAUSIBLY ALLEGE A CLASS THAT CAN BE ASCERTAINED IN AN ADMINISTRATIVELY FEASIBLE MANNER

The class allegations in Taylor's Amended Complaint warrant dismissal because Taylor has not plausibly alleged a class that can be ascertained in an administratively feasible way

under Fed. R. Civ. P. 23. Recent authority in this Circuit confirms that on a motion to dismiss, the court can consider whether a class action complaint plausibly alleges the required elements of class claims under Fed. R. Civ. P. 23. *See King v. UA Local 91*, 2020 WL 4003019, at *3-4 (N.D. Ala. July 15, 2020) (Bowdre, J.) (dismissing complaint pursuant to Fed. R. Civ. P. 12(b)(6) where plaintiffs failed to plausibly allege a certifiable class) and *Williams v. Burger King Corp.*, 2020 WL 5083550, at *6 (S.D. Fla. July 20, 2020) (Singhal, J.) (dismissing class allegations at Rule 12 stage, finding that "Plaintiffs claims are too individualized to support class certification").

The recent *King* and *Williams* decisions are indeed consistent with appellate case law and a number of decisions issued by Florida federal district courts confirming that there is no per se rule against addressing the class action issue on a Fed. R. Civ. P. 12 motion. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) ("This failure of predominance is readily apparent from a reading of the…complaint."); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); *Vandenbrink v. State Farm Mut. Auto Ins. Co.*, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (Moody, J.) (granting a motion to dismiss class allegations, finding that "[g]iven the nature of the claims and individual factual inquiries required, it is apparent the individualized issues are predominant and this suit cannot proceed as a class action."); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010) (Moody, J.) (dismissing class allegations where it was evident from the initial pleadings, prior to the filing of a motion for class certification, that individual assessments of reasonableness were required on a case-by-case basis); *Saunders v. BellSouth Advert. & Publ'g Corp.*, 1998 WL 1051961, at *2 (S.D. Fla. Nov. 10, 1998) (Ungaro, J.) (dismissing class

allegations where, based on the individualized nature of the allegations, it was clear the plaintiff could not satisfy class requirements); *Wallace v. VF Jeanswear Ltd. P'ship*, 2020 WL 999341, at *6 (N.D. Ala. Mar. 2, 2020) (Kallon, J) (citing D.C. Circuit's *John* decision and dismissing class allegation on Rule 12 motion where "the class as presently defined is not ascertainable."); *Lumpkin v. E.I. Du Pont De Nemours & Co.*, 161 F.R.D. 480, 482 (M.D. Ga. 1995) (Fitzpatrick, J.) (granting motion to strike class allegations "early in the discovery stage of litigation" because, "based solely on Plaintiffs' pleadings ... and prior to providing any discovery responses itself," "Plaintiffs have set forth no showing that further discovery will substantiate the class action").

The same result should follow here; as pleaded, Taylor's proposed class lacks facial plausibility to satisfy Fed. R. Civ. P. 23's requirements. The conclusion that Taylor has not plausibly alleged a certifiable class logically results when considering the application of the following principles of law:

- A plaintiff who suffers only an informational injury does not have Article III standing. *Trichell, supra.*

- Article III standing must be examined on a class member by class member basis. *Cordoba, supra.*

- A class cannot be certified in the Eleventh Circuit if ascertaining the class cannot be done in an administratively feasible manner, *i.e.*, without resorting to individualized inquiries. *Karhu v. Vital Pharmaceuticals, Inc.,* 621 F. App'x 945, 947 (11th Cir. 2015).

Here, dismissal of the class allegations is appropriate because the putative class consists only of individuals who have suffered an informational injury. Prior to *Trichell*, an "informational injury" based just on the receipt of an allegedly deficient COBRA notice letter may have been sufficient for class-wide standing under the Eleventh Circuit's unpublished opinion in *Church*. After *Trichell* that is no longer the case.

Under the current state of the law in this Circuit, determining whether any given class member has suffered an additional harm beyond an informational injury sufficient to create standing will require an individualized inquiry. This means that the class cannot be certified. The Court should dismiss the class allegations at this stage rather than require the parties to undertake costly and unnecessary class discovery just to arrive at a legally predetermined outcome: denial of class certification. *See Stepanovich v. City of Naples*, 728 F. App'x 891, 903 (11th Cir. 2018) ("avoiding the imposition of discovery on facially implausible claims is one of the key functions of 12(b)(6)").

### *Trichell* Provides That An Informational Injury Alone Does Not Give Rise To Standing For Any Recipient of the Allegedly Deficient COBRA Notice

In the time since Taylor filed this action, the Eleventh Circuit issued its decision in *Trichell* where it squarely held that an informational injury alone does not confer standing. 964 F. 3d at 1004. Judge Goodman's subsequent decision in *Bryant* applied *Trichell* to a COBRA notice case and recommended that class certification be denied because an informational injury alone does not give rise to standing. 2020 WL 4333452, at *16. The informational injuries suffered by the putative class members here do not confer standing. Some additional harm is required for each class member.

### *Cordoba* Requires the Court to Examine Standing For Each Class Member

In *Cordoba*, the Eleventh Circuit held that Article III standing must be determined as to each individual class member before any relief can be awarded. In reaching that conclusion, the court observed that "unnamed class members' standing poses a powerful problem under Fed. R. Civ. P. 23(b)(3)'s predominance factor" and, after surveying the case law, added that "this problem will necessarily arise here because at some point before it can award any relief, the district court will have to determine whether each member of the class

has standing." *Id.*, 1273-74. The Eleventh Circuit summed up this point by stating that "[t]he essential point, however, is that at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief. That is an individualized issue… ." *Id.*, at 1274.

The import of *Cordoba* is that a district court must, at some point, evaluate each class member's standing on an individualized basis.[5] This aspect of *Cordoba* has been applied by subsequent district courts to deny class certification. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc.*, 2020 WL 3303064, at *10 (S.D. Fla. Mar. 3, 2020) (Marra, J.) (citing *Cordoba* and "recogniz[ing] potential standing impediments as to absent class members" and finding that the "Plaintiff is unable to show what proportion of the putative class members suffered an injury "fairly traceable" to [the Defendant's] conduct…and hence is unable to show that the issue of standing will involve common questions of fact as opposed to individualized determinations."); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 2020 WL 5667766, at *8-9 (S.D. Fla. Aug. 24, 2020) (Ruiz, J.) (analyzing standing under *Cordoba* and noting that "a class should not be certified if it is apparent the it contains a *great many* persons who have suffered no injury at the hands of the defendant."); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, 2020 WL 2395919, at *1 (W.D.N.Y. May 12, 2020) (McCarthy, M.J.) (citing *Cordoba* and noting problem with even approving a class settlement that has class members that have suffered no injury because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.").

---

[5] Frontier is mindful of this Court's decision in *Gross v. Advanced Disposal Services, Inc.*, 2018 WL 8415876 (M.D. Fla. Dec. 10, 2018) (Honeywell, J.). While this Court stated in late 2018 in *Gross* that "only [the named plaintiff] needs to establish standing," *id.* at *4, less than a year later the Eleventh Circuit finally weighed in on this important issue and held that "whether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by Federal Rule of Civil Procedure 23." *Cordoba,* 942 F.3d at 1273.

Considering *Cordoba* alongside *Trichell*, in a class action based principally on an alleged informational injury, in order to determine whether any given class member has standing, a district court must assess whether each class member has suffered more than just an informational injury.

### *Karhu* Prohibits Class Certification Where Ascertaining the Class Would Require An Individualized Inquiry That Can Not Be Conducted In an Administratively Feasible Manner

The final piece of the argument, which conclusively shows that Taylor has not alleged a certifiable class, is the *Karhu* heightened ascertainability standard. A plaintiff seeking class certification bears the burden of establishing that the class can be ascertained. "In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharmaceuticals, Inc.,* 621 F. App'x 945, 947 (11th Cir. 2015). Identifying class members "is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* (quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 F. App'x 782, 787 (11th Cir. 2014).

While issued in an unpublished decision, the *Karhu* administrative feasibility standard has been cited in dozens of cases in the Eleventh Circuit to deny class certification where the court's analysis would necessarily require numerous individualized inquiries. *See, e.g., Fennell v. Navient Sols., LLC*, 2019 WL 3854815, *5 (M.D. Fla. June 14, 2019) (Dalton, J.) ("the presence of the different loans creates further need for individual inquiry and manageability concerns. The proposed class is not ascertainable and class certification is not appropriate."); *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 680 (M.D. Fla. 2015) (Conway, J) (denying class certification in an FDCPA case on ascertainability grounds where, although everyone received the same form of letter, "[p]laintiff [did not] demonstrate that

any of these records contain sufficient information from which the Court could determine the primary purpose of each class member's debt.).

### Considering *Trichell, Cordoba,* And *Karhu* Together, Taylor Has Not Plausibly Alleged A Certifiable Class

The class Taylor seeks to certify is a purely informational injury class, defined at Paragraph 59 of the Amended Complaint as "**All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant, who did not elect COBRA**." [ECF No. 29 at ¶59]. Because the class as defined consists only of informational injury plaintiffs each member of the putative class lacks standing. If the Court were to proceed past a motion to dismiss, in evaluating certification it would need to assess whether each individual class member suffered sufficient additional harm to create standing. This is precisely the type of individualized inquiry that renders ascertaining a class administratively unfeasible.

Judge Covington's recent decision in *Day v. Sarasota Doctors Hosp., Inc.*, 2020 WL 4539145 (M.D. Fla. July 23, 2020) is particularly instructive on this point. *Day* was a class action case that involved alleged improper charges to hospital patients under Florida's PIP regime. While it was perhaps possible to identify the outer bounds of all individuals who met certain requirement of being in the class (they had received, were billed for, and paid for certain PIP-covered emergency healthcare services treatment at the hospital), another requirement of the class was that that patient "have [a] settlement and/or recovery from a personal injury claim." *Id.*, at *4. Judge Covington noted the *Karhu* ascertainability / administrative feasibility problem with "determining which of those individuals received a personal injury settlement or recovery [as it presumably] would require separately contacting each patient (or, in the case of the 148 patients with attorney contacts, their

16

counsel)." *Id.* Judge Covington concluded that "[b]ecause individually contacting over 900 former patients to inquire about personal injury claims would not be administratively feasible, [plaintiff] has failed to show that the proposed class is ascertainable." *Id.* (citing *Foster v. Green Tree Servicing, LLC*, 2017 WL 5508371, at *4 (M.D. Fla. Nov. 15, 2017) (Whittemore, J.) (finding proposed class not ascertainable where identification of class members would require file-by-file review of 500+ loan files).

Judge Presnell's decision in *Stallworth v. Omninet Vill., L.P.*, 2017 WL 2226600 (M.D. Fla. May 22, 2017) (Presnell, J.) is also instructive. In *Stallworth* the plaintiff attempted to certify a class of individuals who lived in his apartment complex and who had suffered from mold problems, which the landlord failed to fix. *Id.*, at *1. Judge Presnell denied class certification on ascertainability grounds because the plaintiff could only identify tenants with leases, as opposed to tenants with leases who had excessive mold problems. This is essentially the same problem that Taylor will have.

In light of the *Trichell* requirement of showing more than an informational injury, *Day* and *Stallworth* map quite well to the facts of this case. Like the plaintiffs in *Day* and *Stallworth*, Taylor may be able to identify the larger set of individuals who meet the outer bounds part of being in the class; in Taylor's case it would be the people who received the same letter. However, Taylor cannot now and will never be able to identify which of these people suffered more than the now insufficient informational injury without conducting an individualized inquiry of each person's circumstances.

Finally, this is not a scenario in which any further discovery or expert testimony will assist the Court in its analysis. Where, as here, a "complaint fails to plausibly allege the necessary elements of class certification, pursuing class-related discovery is unnecessary." *King*, 2020 WL 4003019, at *6. Like in *King*, as a result of the Eleventh Circuit's new

standard with respect to informational injuries announced in *Trichell*, the "issues are plain enough from the pleadings." It is clear that the Taylor has not plausibly alleged a certifiable class. The Court should dismiss the class allegations from the Amended Complaint.

### TAYLOR FAILS TO STATE A CLAIM ON WHICH RELIEF SHOULD BE GRANTED

In addition to lacking standing, Taylor fails to state a claim and his individual claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### Frontier's COBRA Notice Complies with 29 C.F.R. § 2590.606-4

Taylor alleges that Frontier's notices fail to comply with various subsections of 29 C.F.R. § 2590.606-4, and thereby fun afoul of the regulation's general requirement that COBRA notices be written in a manner calculated "to be understood by the average plan participant." [ECF No. 29 at ¶58] (quoting 29 C.F.R. § 2590.606-4(b)(4)(v)). In fact, none of Taylor's allegations are accurate—Frontier's notices include the information Taylor claims is missing and plainly comply with 29 C.F.R. § 2590.6-4.

### The COBRA Notice Provided Taylor With an Explanation of the Continuation Coverage Termination Date

Taylor claims that the COBRA Notice violated 29 C.F.R. § 2590.606-4(b)(4)(viii) because it did not delineate the "specific date" on which his continuation coverage, had he elected it, would terminate. [ECF No. 29, ¶42]. He says that he was unable to "truly make an informed decision regarding continuation coverage without knowing the specific date when coverage will end and when [he] will be uninsured." *Id.* at ¶44. But the regulation Taylor cites does not require the provision of a "specific date," rather, it requires "[a]n explanation of the maximum period for which continuation coverage will be available under the plan; an explanation of the termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period." 29 C.F.R. § 2590.606-4(b)(4)(viii). As described herein, the COBRA Notice provided a detailed

explanation of the potential duration of COBRA continuation coverage, which is variable based on numerous factors.[6]

Given the many factors that might affect the termination date, it would be impossible for Frontier to identify an exact "specific date" of termination in its COBRA notices. This is why the regulation requires not the identification of a specific termination date, but an "*explanation* of the termination date,"—as was provided here.

Taylor's argument that the regulation requires the provision of a specific termination date commits two critical interpretive errors: reading "specific" into the regulation where it does not exist while reading "an explanation of" out. Courts should "ordinarily resist reading words or elements into a statute that do not appear on its face." *United States v. Weaver*, 275 F.3d 1320, 1332 (11th Cir. 2001) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)). Courts must also "give meaning to every word and clause in a statute." *Brotherhood of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1195 (11th Cir. 2008). These doctrines of statutory interpretation apply equally to regulations. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2446 (2019) (When we interpret a regulation, we typically…proceed in the same way we would when interpreting any other written law: We begin…with its text[.]").

Accordingly, the complete language of § 2590.606-4(b)(4)(viii)—"an explanation of the termination date"—must be applied in its entirety, without adding or removing terms. A full, plain meaning of the regulatory text makes clear that its purpose is to require an explanation

---

[6] The notice indicates that COBRA continuation coverage may be terminated prior to the end of the maximum coverage period if the "employer/former employee no longer provides any group health coverage to any of its employees" or "the premium for COBRA coverage is not paid in a timely manner." [ECF No. 21-1 at 7]. These and other termination triggering events could hypothetically occur on any date within the standard 18-month coverage time frame following the qualifying event. Similarly, if a beneficiary becomes disabled, the maximum COBRA coverage period of 18 months may be extended for an additional 11 months. *See id.* at 8.

of the termination date, rather than to identify a specific date on which continuation coverage would terminate. If the regulatory intent were otherwise, it would have so stated. This Court should not accept the invitation to so significantly alter the plain text of a regulation.

### The COBRA Notice Provided The Address To Which Payments Should Be Sent

Taylor alleges that the COBRA Notice did not contain requisite information regarding where initial and periodic payments should be sent, depriving Taylor of "the full breadth of information to which [he] was entitled, and could not determine from the notice, how to properly enroll and maintain continuation coverage." [ECF No. 29 at ¶51]. Contrary to Taylor's allegations, the COBRA Notice contains the following language on page 4, at the top of the election form:

> Please make initial and ongoing payments to WageWorks, Inc. P.O. Box 660212, Dallas, TX 75266-0212 (Note: The payment address only accepts regular USPS mail; overnight packages are not accepted).

[ECF No. 21-1 at 2]. The COBRA Notice further indicates, "If you have any questions about this notice or need further information about your rights to elect COBRA coverage, please contact WageWorks at 1-866-747-0039." *Id.* at 3.

It is evident from its face that the COBRA Notice provided the address to which payments should be sent, in full accordance with 29 C.F.R. § 2590.606-4(b)(4)(xii). Accordingly, Taylor's claim fails on this basis as well.

### A COBRA Notice is Not Required To Identify a Plan Administrator and the Notice Here Provided the Contact Information that is Actually Required

Taylor argues that the COBRA Notice violated 29 C.F.R. § 2590.606-4(b)(4)(i) because it did not identify the plan administrator or provide its name, address, and telephone number. Taylor again misinterprets the regulatory requirements, because Frontier is obliged only to provide "the name, address, and telephone number of the party responsible under the plan

for administration of continuation coverage benefits," not the plan administrator. The COBRA Notice provided all the required information.

In resolving this issue, this Court has the benefit of clear guidance from the regulatory body itself. The DOL—which has primary authority to interpret and enforce Title I of ERISA pursuant to 29 U.S.C. §§ 1132, 1133, & 1135—very recently addressed this precise issue as *amicus curiae* in *Carter v. Southwest Airlines, Co. Board of Trustees*, Case No. 8:20-cv-01381 (M.D. Fla. 2020), which is pending before Judge Jung.[7] The question presented in the DOL's *Carter* brief is:

> Whether a [DOL] regulation requires that an election notice for continuation coverage contain the plan administrator's contact information, where that election notice lists contact information only for the specific "party responsible for administration of the plan's continuation coverage benefits," 29 C.F.R. § 2590.606-4(b)(4)(i), who is not the plan administrator.

*See* DOL's *Carter* brief, attached as Exhibit 1 at 1.

As in this case, the plaintiff in *Carter* alleges that the COBRA election notice she received fell short of regulatory requirements, in part because the notice did not contain any contact information for Southwest as the plan administrator. *Id.* at 4. Southwest moved to dismiss, arguing that the notice repeatedly set forth the name, address, and phone number of the party responsible for COBRA administration for the plan and that the cited regulation, 29 C.F.R. § 2590.606-4(b)(4)(i), did not require the disclosure of information about Southwest as the plan administrator. *Id.* at 4–5.

The DOL agrees with Southwest's position that, in the regulation's text, "the party responsible under the plan for the administration of continuation coverage benefits" does not refer exclusively to the "plan administrator." The DOL cites four different sources to confirm that "the party responsible" includes entities that may not be the plan's administrator, in

---

[7] Judge Jung conducted oral argument on the motion to dismiss in *Carter* on October 28, 2020. A copy of the transcript of that hearing is attached as Exhibit 2.

which case the regulation requires information only for a "party responsible" rather than for the plan's administrator: the regulatory text, the regulation's preamble, the DOL's post-regulation guidance, and the regulation's purpose. *Id.* at 6.

Frontier commends this Court to give consideration to the DOL's *Carter* brief and Frontier adopts those arguments by reference. These arguments warrant significant attention, as an agency's interpretation of its own regulations is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1305 (11th Cir. 2008) (granting deference to the Department of Housing and Urban Development's interpretation of a regulation as laid out in an *amicus* brief); *Maldonado v. Alta Healthcare Group, Inc.*, 17 F. Supp. 3d 1181, 1191, n. 12 (M.D. Fla. 2014) (Honeywell, J.) (applying *Skidmore* deference and finding "there is no reason for the Court to question [the] validity" of the DOL's position on a particular issue.); *Reynolds v. Pronto Corp.*, 2009 WL 10667071, at *5 (S.D. Fla. July 10, 2009) (Hurley, J.) (applying *Skidmore* deference to position set forth in a DOL opinion letter.)

As Taylor acknowledges in his Amended Complaint, see [ECF No. 29, ¶ 55 & 57], the COBRA Notice provides all of the information that is required under the regulation: the name, address, and telephone number of WageWorks, Inc., "the party responsible under the plan for administration of continuation coverage benefits." WageWorks' address is provided on pages 1 and 4 of the COBRA Notice, and its phone number is listed on page 2. The COBRA Notice explains on page 1 that "WageWorks has been retained by Frontier Communications" to provide notice of the right to continuation coverage. On page 3, the COBRA Notice further explains that,

> [i]f you choose to elect COBRA coverage, please complete the attached COBRA Coverage Election Form and mail [it] by United States Postal Service ("USPS") to WageWorks at P.O. Box 223684 Dallas, TX 75222-3684. You may also fax the completed COBRA Coverage Election Form to Fax#: 866-450-5634.

[ECF No. 21-1 at 3]. One the same page, the COBRA Notice provides detailed instructions for electing COBRA coverage online on WageWorks' website at mybenefits.wageworks.com.

The COBRA Notice provides even more information than is required about "the party responsible under the plan for administration of continuation coverage benefits," such as a fax number and website. The regulation does not require Frontier to identify or provide contact information of the plan administrator. Accordingly, the COBRA Notice is compliant with the regulation.

### The Department of Labor Requires "Good Faith" Compliance with DOL Regulations, Not Strict Adherence

Taylor's claims should also be dismissed because the DOL requires only good faith compliance with DOL regulations, not strict adherence. The COBRA Notice meets that standard. The DOL model notice is a guide that plan sponsors can follow to demonstrate a "good faith" attempt to comply with the regulations, and the Frontier COBRA Notice substantially tracks the form and substance of the DOL model notice and complies with all applicable DOL regulations. Taylor cannot maintain a claim based on his allegations that the COBRA Notice may have not tracked the DOL model notice verbatim as that is not what the law requires.

Taylor is advancing a position that if a notice deviates in even the most minor way from the DOL regulations, such notice should be deemed deficient as a matter of law. *See* [ECF No. 29 at ¶13–15]. However, the DOL regulations and cases analyzing those regulations demonstrate that this strict-compliance standard is incorrect.

The DOL Employee Benefits Security Administration ("EBSA") has created a model COBRA notice. EBSA has also produced the Employer's Guide to Group Health Continuation Coverage under COBRA (the "EBSA Guide"), which describes the obligations of employers who are subject to COBRA and expressly states that employers' use of the model notice

represents "good faith" compliance with COBRA's notice requirements. (*See* EBSA Guide at 5, attached as Exhibit 3.)[8] This statement alone indicates that the DOL imposes a good-faith standard of compliance instead of a strict-compliance standard.

Further, while the regulations offer a "model notice that is intended to assist administrators in discharging the notice obligations," the regulations expressly provide that "[u]se of the model notice is not mandatory." 29 C.F.R. § 2590.606-4(g). In fact, the regulations explain that the model can be "modified or supplemented" as appropriate. *See id*. The instructions to the DOL's model notice, also reinforce the conclusion that the DOL imposes a good-faith, rather than a strict-compliance, standard with respect to COBRA election of coverage notices:

> The [DOL] has developed a model [COBRA] continuation coverage election notice that the Plain may use to provide the election notice. To use this notice properly, the Plan Administrator must fill in the blanks with the appropriate information. ***The Department considers use of the model election notice to be good faith compliance with the election notice content requirements of COBRA. The use of the model notice isn't required***. The model notices are provided to help facilitate compliance with the applicable notice requirements.

[ECF No. 5-2 at 2] (emphasis added). Thus, the DOL has made it clear that (1) the use of the model notice is not mandatory, and (2) "good faith compliance" is all that is required to fulfill the COBRA notice requirements.

The Second Circuit's decision in *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174 (2d Cir. 2016) is instructive on this point. There, the court held that the plan participant's claim for alleged violations of COBRA's notice requirements failed where the record established the COBRA administrator's good faith effort to comply with the statute. *Id*. at 183-84. In reaching that conclusion, the Second Circuit noted that courts from the First, Third, Fifth, Eighth, and

---

[8] The EBSA Guide is publicly available at https://tinyurl.com/qkjb9ru. The Court may take judicial notice of this document pursuant to Fed. R. Evid. 201(b). *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

Tenth Circuits had all applied a good faith standard in evaluating whether a COBRA administrator met its obligations under COBRA. *Id*. at 183.

Adopting a good-faith or substantial compliance standard is also consistent with Eleventh Circuit's application of other ERISA regulations. For example, when a participant asserts a claim under Section 502(a)(3) of ERISA for failure to provide a full and fair review of a claim for benefits, courts have widely applied a substantial compliance standard in determining whether an administrator's review of a benefits decision complies with ERISA. *See Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1317-18 (11th Cir. 2000). It is reasonable to conclude that the Eleventh Circuit would apply the same standard under Section 2590.606-4(b)(4), which is essentially an outgrowth of the requirements imposed on health plans by ERISA.

The Eleventh Circuit has also explained that a COBRA notice must "be sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002); *Pierce v. Visteon Corp.*, 843 F. Supp. 2d 936, 940 (S.D. Ind. 2011) ("[A] good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy COBRA requirements.") (collecting cases). Mere technical deficiencies in a COBRA notice do "not prevent [a plaintiff] from making a meaningful choice to continue [his/her] coverage." *Franks v. Cent. Garden & Pet Co.*, 2007 WL 2320624, at *6 (M.D. Ga. Aug. 10, 2007) (Land, J.).

Faced with the fact that the notice contains the information required by the DOL regulations, Taylor falls back on the catchall provision of the COBRA regulations and asserts that the COBRA Notice is not "written in a manner calculated to be understood by the average plan participant." This conclusory allegation is insufficient to state a claim. Taylor fails to allege a single fact to support this purported COBRA violation. For example, Taylor fails to allege how or why he could not understand the notice or how it prevented him from making an

informed decision about whether to invoke COBRA continuation coverage. Such pleading failures are insufficient to state a claim under 29 C.F.R. § 2590.606-4(b)(4). *See Valdivieso v. Cushman & Wakefield, Inc.*, 2017 WL 2191053, at *1 (M.D. Fla. May 18, 2017) (Merryday, J.).[9]

Regardless of whether a good-faith or strict-compliance standard applies, Frontier complied with the applicable deadlines and the notice contains all the information expressly required by 29 C.F.R. § 2590.606-4(b). In sum, the Amended Complaint fails to state a claim because Taylor does not allege the facts necessary to establish that Frontier's notice violated COBRA. Accordingly, the Court should dismiss the Amended Complaint.

### THE COURT SHOULD DISMISS TAYLOR'S CLAIM FOR INJUNCTIVE RELIEF

Taylor also seeks injunctive and declaratory relief in the form of a Court order "[d]eclaring that the COBRA notice sent by [Frontier] to [Taylor] and other Class Members violated 29 U.S.C. §1166(a) and 29 C.F.R. §2590.606-4"; "enjoining [Frontier] from continuing to use its defective COBRA notice and requiring [Frontier] to send corrective notices"; and requiring Frontier to "issu[e] proper notice to the Class at Defendant's expense." [ECF No. 29 at 17-18].

The Court should dismiss Taylor's demands for injunctive and declaratory relief both pursuant to both Fed. R. Civ. P. 12(b)(1) for lack of standing and Fed. R. Civ. P. 12(b)(6) for failure to sufficiently allege all of the required elements for declaratory and injunctive relief.

To begin, Taylor has not alleged a "substantial likelihood" of future injury for himself (or any other class member) and therefore lacks Article III standing to seek prospective injunctive or declaratory relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 104-05 (1983). As the Eleventh Court recently made clear "an injunction [or] declaratory relief requires a likelihood of future harm." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,

---

[9] Taylor's purported subjective confusion as to the COBRA Notice is irrelevant, as courts evaluate the sufficiency of a COBRA notice under an objective standard. *See Wilson v. SW Bell Tele. Co.*, 55 F.3d 399, 407 (8th Cir. 1995).

938 F.3d 1170, 1179 (11th Cir. 2019) (citing *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–47 (11th Cir. 1999). As Judge Antoon made clear earlier this year, "[t]o obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, inter alia, a sufficient likelihood that he [or she] will again be wronged in a similar way." *Hitchcock v. USAA Cas. Ins. Co.*, 2020 WL 364600, at *2 (M.D. Fla. Jan. 22, 2020) (Antoon, J.).

If the Court finds that Taylor does at least have standing to pursue injunctive and declaratory relief, the Court should find that dismissal of those demands is called for, pursuant to Fed. R. Civ. P. 12(b)(6), based on lack of sufficiently pleading those demands.

In 2006, the Supreme Court held that a "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Four years after *eBay*, which was a patent case, the Supreme Court made clear that same test also applies outside the context of intellectual property disputes. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) (stating that the *eBay* factors apply to permanent injunctions sought to remedy a National Environmental Policy Act violation).

Here, Taylor fails to allege an irreparable injury. "An irreparable injury requires 'a substantial threat of harm to the movant that cannot be compensated by money.'" *Acosta v. Fishing Professionals, LLC*, 2018 WL 6603641, at *8-9 (D. Colo. Nov. 20, 2018) (Wang, M.J.) (declining to recommend a permanent injunction prohibiting the defendant from acting as a fiduciary or service provider to any ERISA-covered employee benefit plan). Simply put, "the

case law is clear that economic harm alone is not enough" to constitute irreparable harm. *Oviedo Med. Ctr., LLC v. Adventis Health Sys./Sunbelt, Inc.*, 2020 WL 4218276, at *2 (M.D. Fla. Apr. 28, 2020) (Berger, J.).

Taylor's alleged injuries, if proven, are economic injuries for which he has adequate remedies at law. Specifically, Taylor alleges that he lost health insurance for himself and his dependents and paid out of pocket for medical expenses incurred before he obtained health insurance through a subsequent employer. [ECF No. 29 ¶¶25, 26]. He claims that his health insurance "has monetary value, the loss of which is a tangible and an economic injury." (*Id.* at ¶¶25, 35). Taylor also characterizes the out of pocket medical expenses he claims to have incurred as "a tangible economic loss." (*Id.* at ¶26).

The Eleventh Circuit has made clear that a plaintiff seeking injunctive relief under federal statutes that include statutory damages must establish that there is *both* a likelihood of future harm *and* the inadequacy of a remedy at law. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (reviewing the denial of an injunction under the TCPA and holding that '[b]ecause [the [plaintiff] established neither a likelihood of future harm nor the inadequacy of his remedy at law, he was not entitled to an injunction.").

Judge Presnell's recent opinion in *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, 2019 WL 2567971 (M.D. Fla. June 21, 2019) (Presnell, J.)—a TCPA class action—is instructive and demonstrates why Taylor's claim for injunctive relief should be dismissed. In *Picton*, Judge Presnell found that "[i]n this Circuit, at the motion to dismiss stage, 'a prayer for injunctive and declaratory relief requires an assessment … of whether the plaintiff has sufficiently shown a real and immediate threat of future harm.'" *Id.* at *3 (citing *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2007). There, the district court concluded that the plaintiff did not

even attempt to demonstrate that he had alleged a real and immediate threat of future statutory violations. *Id*.

The same result should follow here. The verbs that Taylor uses refer to conduct that has occurred in the past, using the past and pluperfect tenses:

- ¶18: "Defendant *used* its [deficient] Notice (See Exhibit A – Notice) to discourage participants from enrolling in continuation coverage."

- ¶30: "On or around April 1, 2019, Defendant *caused* to the deficient COBRA notice to be mailed to Plaintiff. (See Exhibit A – Notice)."

- ¶33: "The COBRA notice…*failed to provide* an explanation of the continuation coverage termination date, omitting it entirely."

- ¶34: "The COBRA notice…*did not provide* the address to which payments should be sent."

- ¶51: "The COBRA notice *did not contain* information regarding *where* either payment should be sent."

- Paragraph 53: "The COBRA notice Plaintiff received *was misleading* because it did not give Plaintiff the information necessary for him to enroll in COBRA."

In addition, Taylor alleges that Frontier terminated his employment over one year ago. [ECF No. 29 at ¶28]. Moreover, Taylor avers that he has indeed obtained health insurance from a subsequent employer. (*Id*. at ¶26). Accordingly, Taylor has not alleged that he is likely to suffer harm related to the COBRA Notice in the future.

Further, any attempt that Taylor may make to bolster his injunctive and declaratory claims by relying on alleged future claims of putative members of his purported class fails as a matter of law. At the motion to dismiss stage, the Court need only consider Taylor's own claims. As this Court and many others have found in granting similar motions to dismiss, in a putative class action, a plaintiff cannot rely on the "injuries of others" to survive a motion to dismiss. *Arcure v. Kellogg Co.*, 2011 WL 13294631, at *2 (M.D. Fla. Mar. 29, 2011) (Honeywell, J.). This is because "named plaintiffs who represent a class "must allege and

show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Zia v. CitiMortgage, Inc.*, 210 F. Supp. 3d 1334, 1337 (S.D. Fla. 2016) (Gayles, J.).

CONCLUSION

For the reasons set forth herein, the Court should enter an order dismissing Plaintiff Taylor's Amended Complaint. To the extent that the Court reaches the Fed. R. Civ. 12(b)(6) basis for the motion and applies *Skidmore* deference and adopts the DOL's position on the COBRA notice, dismissal should be with prejudice.

CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to M.D. Fla. L.R. 3.01(g), I hereby certify that undersigned counsel for Frontier conferred with counsel for Taylor and can confirm that Taylor is not in agreement with the issuance of the requested relief.

Dated: November 18, 2020

Aaron Weiss (FBN 48813)
Email: aweiss@carltonfieds.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
T:  305-530-0050 / F:  305-530-0055
aweiss@carltonfields.com

*Attorney for Defendant Frontier*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF to the counsel of record listed on the service list set forth below.

*/s/  Aaron Weiss*

**Service List**

Luis A. Cabassa (FBN 053643)
Email: lcabassa@wfclaw.com
Brandon J. Hill (FBN 37061)
Email: bhill@wfclaw.com
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave, Suite 300
Tampa, Florida 33602-3343
T:  813-224-0431 / F: 813-229-8712

*Attorneys for Plaintiff Taylor*