**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**IAN TAYLOR, individually**
**and on behalf of all others**
**similarly situated**

      **Plaintiff,**

**v.**                  **CASE NO.: 8:20-cv-509-T-36CPT**

**CITIZENS TELECOM SERVICES**
**COMPANY, LLC,**

      **Defendant.**
_____/

### UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

The Class Representative, Ian Taylor ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1]

### *Brief Summary*

On September 10, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 57). Following entry of that Order, the Settlement Class

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on April 21, 2021. (*See* Doc. 47-1).

Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and the reactions from class members has been overwhelming position.  Thus far, <u>zero</u> class members have objected and <u>zero</u> have asked to be excluded.  Also, there have been approximately 840 claims filed.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. Defendant does <u>not</u> oppose this Motion.  In further support thereof, Plaintiff states as follows:

## I.  <u>BACKGROUND.</u>

### A.  <u>The Litigation</u>.

On March 4, 2020, Taylor, individually and on behalf of a putative class, filed a Complaint in the United States District Court for the Middle District of Florida, alleging Defendant failed to provide Taylor and the Class adequate notice of their right to continued health care coverage under COBRA. *See* ECF No. 1.

Taylor alleged that the COBRA notice issued to him and to the putative class failed to provide an explanation of the continuation coverage termination date; failed to provide the address to which payments should be sent, failed to identify the plan administrator, and that the COBRA notice was not written in

a manner calculated to be understood by the average plan participant. *Id.* Taylor alleged that he and other similarly-situated individuals are entitled to statutory damages, attorneys' fees, and costs as a result. *Id.*

On October 18, 2020, Defendant filed a Motion to Dismiss. *See* ECF No. 32. On December 2, 2020, the Court entered an order staying the Litigation pending completion of mediation. *See* ECF No. 37. On February 11, 2021, Taylor, Frontier, and Empyrean (accompanied by a representative of its insurer) attended remote mediation conducted by Rodney Max, a highly-regarded professional mediator, via Zoom Conference. Mr. Taylor participated in the conference, along with his attorneys. *See* ECF No. 40.

Prior to, during, and following the mediation conference, the Parties have engaged in substantial arms-length negotiations to resolve the Litigation with a view by Taylor's counsel toward achieving substantial benefits for the Settlement Class, and by all Parties to avoid the cost, delay, and uncertainty of further litigation, trial, and potential appellate practice.

The terms of the Settlement Agreement are similar to other COBRA class action settlements approved in the Middle District of Florida, including most recently by Judge Bucklew in *Silberstein v. Petsmart, Inc.*, 8:19-cv-02800-SCB-AAS (M.D. Fla. December 4, 2020) (Doc. 38), and also by Judge Merryday in *Valdivieso v. Cushman & Wakefield, Inc.*, M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92), Judge Moody in *Hicks v. Lockheed*

3

*Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34), Judge Jung in *Carnegie v. FirstFleet Inc.*, M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019), (Doc. 63), and Judge Scriven in *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127).

If granted final approval here following the upcoming January 14, 2022 final fairness hearing, the settlement will provide immediate relief to approximately 16,317 Settlement Class Members. Defendant will make available the gross sum of $709,789.50 into a common fund as per the terms of the Settlement Agreement. Class members who file valid claims are entitled to a gross payment per Settlement Class Member and it is expected that net recovery will range between $20.00 - $30.00 if the amounts sought under the agreement are approved. Such range is consistent with other COBRA class action settlements approved in this district.

**B.**   **Mediation And Settlement Agreement.**

The Parties' efforts culminated in settlement of the class through mediation as defined by the Court, consisting of approximately 16,317 members. The settlement class is defined as follows:

> Nationwide COBRA Class:
> (i) All participants and beneficiaries in Frontier's Health Plan (ii) who, within the four (4) years prior to the filing of the Complaint, were sent a COBRA notice by Frontier (iii) as a result of a qualifying event and (iv) who did not elect COBRA.

4

The Agreement, which remains subject to final Court approval, provides for settlement under the following key terms:

- Defendants agree to make available a gross Settlement Fund in the amount of $709,789.50;

- Every Settlement Class Member that timely submits a claim will receive a payment from the Settlement Fund of approximately $23.00;

- Payment from the Settlement Fund of the cost of notice and administration of approximately $85,000;

- Payment to the named plaintiff of $5,000.00 in exchange for a general release of all other employment and all other claims he is releasing against the Released Parties, including but not limited to any claims related to termination of his employment with Frontier; and

- Payment from the Settlement Fund of Class Counsel's attorney's fees in an amount of one-third of the total amount that will be made available in connection with the gross Settlement Fund, plus costs, for a total of $241,826.50.

## C. **The Court's Order granting Preliminary Approval of the Settlement.**

On September 10, 2021, this Court issued an order preliminarily approving the Class Action Settlement Agreement between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 57.) Following entry of that Order, and as further detailed in the attached noticing report from the Settlement Administrator, Notice was mailed out to the approximately to the Settlement Class Members.

**D.    The Class Members' Reactions to the Settlement.**

The Settlement Claims Administrator, Epiq Class Action & Mass Tort Solutions ("Epiq"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on October 19, 2021, via first-class mail. A total of 15,077 Class Notices were mailed to members of the Settlement Class. (*See* Exhibit B, Sworn Declaration from Epiq.)

The Class Notice provided Settlement Class Members with all required information relating to the Settlement.   The Settlement website provided Settlement Class Members with access to the following documents: (i) the Long Form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and Release, with exhibits; (vi) Joint Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order.  The Long Form of Notice included a set of Frequently Asked Questions ("FAQs") and answers about the Settlement.

Epiq also set up a toll-free telephone support line that Settlement Class Members could call to obtain additional information. Thus, Notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval.   The Settlement Class Members overwhelmingly accepted the Settlement.  None objected and none asked to be excluded.  (*See* Exhibit B, Sworn Declaration from Epiq.)  Given these facts, the Class Members'

reactions were overwhelmingly positive.  Thus, the Court should grant this Motion and enter final approval of the Parties' class action settlement.

## II.   THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

### A.   The Class Has Already Been Certified on a Preliminary Basis.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 57).  Since the Court's Preliminary Approval Order, no objections addressing class certification were received.  Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### B.   Notice to the Class under Fed.R.Civ.P. 23(e)(1).

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class.  As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by send out the Court-approved short form version of the notice to all 15,077 class members via U.S. Mail.  That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information.  Thus, notice was sufficient.

**C.    Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  This standard is satisfied here and the Court should enter a Final Order approving the Class Action Settlement Agreement.

**1.    The Class Representative and Class Counsel Have Adequately Represented the Class.**

There is no question that Ian Taylor and the undersigned have adequately represented the class.  This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Battle v. Law Offices of Charles W.*

*McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Ian Taylor, is adequate given that his interests are equivalent to those of the Settlement Class. He was actively involved in this case from its inception, including providing the original documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in settlement discussions, and also attending the Zoom mediation. Furthermore, there is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. He, along with his counsel, secured a high six-figure settlement from a highly-sophisticated Defendant in favor of the class members he represents.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously-filed declarations by class counsel, *see* Docs. 46-3 (Hill Decl.), and 47-4 (Cabassa Decl.), and the attached declaration. *See also* Hill Decl., Exhibit C. In fact, the undersigned routinely appointed as class counsel in a COBRA notice case in the Middle District of Florida, including in *Vazquez v. Marriott International, Inc.,* M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF (appointed as class counsel in COBRA class action case involving over 19,000 class members); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also*

*Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

**2.     The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel.  Not only that, the Parties used a highly-respected mediator in this case.  *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator").  The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").  Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that

approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. <u>The Settlement Provides Adequate Relief to the Class Members</u>.

Defendants agree to make available a gross Settlement Fund in the amount of $709,789.50.  Every Settlement Class Member that timely submits a claim will receive a payment from the Settlement Fund of approximately $23.00.  Payment from the Settlement Fund of the cost of notice and administration of approximately $85,000. These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.  This recovery falls well within the range of reasonableness for settlement purposes.  *See e.g., Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's net recovery was $11).); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's net recovery was $13).

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir.

2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Plaintiff still had to establish that class certification was warranted, and further demonstrate the merits of his claim, both individually and on behalf of any class. Each of these remaining phases of the litigation presents serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

In sum, the gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement the Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at

trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.  The Named Plaintiff also supports the Settlement as do the Class Members— evidenced by the lack of objections and low exclusion rate.

### 4.    The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably.  In fact, they are treated identically.  As set forth above, members of the class will receive a net payment of $23.00.  These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.[2]

If Plaintiff had chosen to continue to litigate his claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages.  First, with respect to liability, important issues remained to be decided upon the evidence presented.  Second, with respect to damages, the pertinent regulations provide for a

---

[2] *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 member class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's net recovery was $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's net recovery was $13).

maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all.  Third, even if Plaintiff overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members.  *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

**5.      The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all.  Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay.  Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

**D.      The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.**

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 46-1, corrected by Doc. 47-1, the settlement agreement for which they seek final approval.  Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object.  And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date

there have been no objections made.   Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

### III.   CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion.  A proposed Order is attached as Exhibit A.

### IV.   CERTIFICATE OF GOOD FAITH.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

DATED this 17th day of December, 2021.

Respectfully submitted,

/s/Brandon J. Hill
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
***Attorneys for Plaintiff and the Class***

18

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 17th day of December, 2021, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/Brandon J. Hill_
**BRANDON J. HILL**

19